In our third case, Pearson v. Colvin, No. 14-2255. Mr. Wallace. May it please the Court. My name is Greg Wallace, and I represent Jeffrey Pearson in the Social Security Disability Appeal. The issue before the Court today is a narrow but important one. Is the ALJ's duty to identify and resolve possible conflicts between the V.E.'s testimony and the DOT discharged simply by asking the V.E. if such a conflict exists? Now, the District Court and the government say that if the V.E. says there's no conflict, then there is no conflict to resolve, and the ALJ has no duty to inquire further. We contend that such a formalistic view is inconsistent with the language of Social Security ruling 004-P and the ALJ's duty to develop the record, and that it puts a premium on ignorance in the adjudication of Social Security Disability Appeals. Do you do a lot of Social Security Disability Appeals? I do, Your Honor. So maybe you can help me because I don't think I've ever participated in one. So the ALJ that presides has regulations in front of him talking about what qualifies as a disability? Can you run me through one? Did you handle this one? Not this hearing, but I generally do appeals. In fact, I was the attorney that argued both the Kemp and the Moore cases in the Eighth Circuit regarding the reaching issue as well. And my wife happens to do many of these hearings, so I'm familiar with them. You're the expert. I've done them before. So the ALJ, there's a five-step process by which the ALJ processes. Right, I know the five steps. Okay, all right. So a hearing starts out. ALJ generally introduces himself, takes testimony from the claimant who's there. Sometimes the claimant will bring a friend or a family member as a third-party witness, and then it goes to the VE if the ALJ has called one to be there. The ALJ then will ask a hypothetical to the VE in which he sets out the impairments of the claimant, and the VE then testifies whether there are jobs that are available in the economy for a person with the kind of limitations that are described in the hypothetical. Does somebody have a list of the requirements for these various jobs when they're talking about them? The VE does. But the VE should have a computer or something there. You can access the Dictionary of Occupational Titles over Westlaw. Right, I understand. I'm trying to get a handle on what these actually are like. The ALJ, though, doesn't have this, doesn't look it up as we go along? Not typically. The ALJ does not look at the DOT. The ALJ do these Social Security claims exclusively? Yes. Yes, this is a Social Security. So they presumably have some familiarity. Yes. What I'm trying to do is to find out how much of a burden it is to do what it is you say we should do. Exactly, and that's a great question. The ALJ has the jobs that are typically identified by the VE, and in this case, particularly the motel cleaner job and the cashier two job, are jobs that are oftentimes identified as possible jobs by vocational experts that a claimant can perform. And so the ALJ should be somewhat familiar with the requirements of those jobs. If not, then it takes maybe five or ten minutes to look it up online or in the hard copies of the dictionary. But nobody does. Generally at the hearing, the VE may consult his or her own personal computer that maybe has a database, but typically at the hearings, the way they're held, where Mr. Bartels, who's the attorney that did handle this, who happens to be my father-in-law, typically in those situations neither the ALJ nor the attorney has immediate access to the DOT during the hearing. And how long does the hearing typically take? About 30 minutes. And so the ALJ is doing a whole slew of them in a day? Seven, eight, ten per day. And the decision comes out afterwards? Yes, typically three, four, five months afterwards. So when is the ALJ supposed to sort of sit down and look at the DOT and see if there's a potential conflict? If he doesn't look at it at the hearing, then once he goes back to his office and begins writing the decision, it's that point where we contend that the ALJ ought to at least investigate the DOT independently to see if there's any conflict. And if he or she finds a potential conflict then? I thought the point was then the ALJ is supposed to get an explanation from the VE. So then what happens if the hearing is over and the VE is gone? What happens after that is the ALJ can then send out written interrogatories to the VE, and then the claimant's counsel has an opportunity to also respond to those interrogatories. Does that ever happen? Yes, it does. It does. So a conflict here existed between the VE's testimony, or at least a possible conflict existed between the VE's testimony and the DOT. The ALJ in his hypothetical limited the VE's consideration to jobs that require no overhead reaching with a non-dominant arm. The VE said such a person could perform the motel cleaner, cashier two, and machine tender jobs. If you look in the DOT, all three of those jobs require frequent reaching. And the DOT defines reaching as extending the arms in all directions. So there is a possible conflict here. Our argument is not that there is an actual conflict, but this is something that the VE should have explained, should have resolved, and the ALJ should have put that explanation in his written decision. Two circuits, the Seventh Circuit in the Prochaska case and the Eighth Circuit in the Kemp and more cases, as well as numerous district courts, have held that a possible conflict exists in this type of a situation. What is the degree of deference that we give to the Commissioner's interpretation of the Social Security regulations? The degree of deference is, with respect to the regulations, I think would be as ordinary under Chevron as it would be in any other kind of regulatory question here. The Social Security ruling here that is at issue is we don't have any problem with the way that the Social Security ruling interprets the regulations. I don't think there is any deference that is required to give Commissioners' counsel at oral argument deference into how he interprets the interpretation of the regulations. You would regard it as a litigation position? Yes. Well, I thought consistent litigation positions were often deferred to by agencies. Is that not correct? It was not correct in the Eighth Circuit, and I don't know that the Commissioner has really taken a consistent litigation position on this, at least at the circuit court level. But nevertheless, the Commissioner says that even if you do give some deference, we're suggesting it's our position that the deference here does not overcome an obvious misinterpretation by the Commissioner of Social Security ruling 004P. The standard is obvious conflict? The standard here is possible conflict. Is there a possible conflict? Not an obvious conflict. Not an obvious conflict in the sense that the ALJ has to be aware of it. If the rule is that the ALJ only has to resolve conflicts of which he is aware, then the ALJs can routinely escape judicial review. Well, of course, obvious can have a lot of meanings. Yes. I could say this argument is obviously excellent. Well, I hope so. That would mean it's really clear, right, that it's excellent? Yes, but the ALJ routinely resolves conflicts in evidence. And if you were reviewing a decision by an ALJ that had ignored or seemed not to be aware of conflicts, let's say conflicts in medical evidence that goes directly to the question of disability, that would be reversible error. So in this particular case, just because the conflict is not – and we don't really know whether the conflict was obvious to the ALJ or not because we don't have anybody that's read the ALJ's mind in the sense that he may have looked at this and said, well, I know these jobs require frequent reaching, but I don't really think that there's a conflict. Now, the point of – And if he not – we didn't have to read his mind, but he'd actually said that. If he had actually said that and given an explanation for that, we wouldn't be here today. That's exactly what we're – So you think the standard is not obvious conflict, but what? An apparent conflict. The SSR-004P seems to use the term apparent in the sense of a possible conflict, not necessarily one that's obvious. If you look at the title where it talks – I think a possible conflict would be almost an impossible standard to impose if you say apparent conflict equals possible conflict. Yes. Well, there is a – as a matter of law, there is a – at least according to the Seventh Circuit and the Eighth Circuit, there is a possible conflict between a VE who testifies that a person cannot reach – who says these are jobs that a person who cannot – who can only occasionally reach overhead can perform, but the DOT says these jobs are – involve frequent reaching and defines reaching as reaching in all directions. So at least the – I understand the application to this case, but if we set out a standard of any possible conflict, I don't think – I think that that would be an impossible standard to uphold. Well, the position that the district court took here and the position that the government argues before this court is that the ALJ's duty is discharged simply by asking the VE if there's a conflict. I understand that, but we're looking for now – we're looking for the rule going forward. And what the rule going forward should be is that the ALJ has an independent duty to investigate whether there is a possible potential conflict between the VE's testimony and the DOT. Can't it just be when it says that he has to investigate – the ALJ, he or she has to investigate and obtain a reasonable explanation for conflicts or apparent conflicts in occupational information? And it's obvious that apparent – excuse me, it's clear that apparent cannot mean obvious in that heading because then it would make no sense that you need a reasonable explanation for conflicts or obvious conflicts. It clearly means for either conflicts or things that appear to be conflicts, regular reaching or not. Limits on reaching that may well be resolved once you get an explanation. That's what it talks about. But I just don't think there's any interpretation to be done here. It's extremely clear. I think it is, Your Honor. Well, then why don't you adopt that standard? We will. If the court is agreeable to that, we would be fine with that as long as you don't adopt the standard that was adhered to by the district court that all the ALJ has to do is ask the VE if there's a conflict. If the VE says there's no conflict, then that's the end of the ALJ's duty to identify and investigate those conflicts. And again, in that case, I think going forward, apparent possible conflicts between the VE and the DOT, as long as the ALJ has the independent duty to identify those conflicts and doesn't cede that duty solely to the VE by simply asking the VE whether there's a conflict, the VE can say yes or no, and if the VE says no, that's the end of the matter. VEs can testify incorrectly. That's the whole reason we have Social Security ruling 004-P is when the VEs testify that there is not a conflict or whether the VEs don't identify the conflict, the ALJ, the responsibility is placed on the ALJ to resolve any conflicts between those two sources of evidence, the VE testimony and the DOT. And when you say testify, are these people put under oath? Yes, they are. Thank you. I think we understand your position. Thank you, Your Honor. Your Honors, may it please the Court, I'm Mark Exley for the Commissioner in this case. I'm going to address completely a separate argument, and that's the definition of a breaching, because I think you have to deal with the definition of a breaching before you discuss whether or not there's a conflict in the understanding of a breaching as used by the Dictionary of Occupational Titles and the vocational expert. Breaching is defined by what's called the Selective Characteristic of Occupations, a companion to the Dictionary of Occupational Titles, and as the appellant correctly states in his brief at page 14, includes, quote, extending hands and arms in any direction. Extending hands and arms in any direction. But the S, the plural in both cases, is in parentheticals, is in parentheses. So it's extending hand, parenthetical S, and arm, parenthetical S. Because the S is placed in the parentheses, they're optional. That's what the parentheses signal. It could be two hands and arms, or it could be one hand and arm. And that's the absolute definition from the Dictionary of Occupational Title, which everybody agrees is the standard that determines what reaching is. Now, appellant has the use of his non-dominant hand and arm unrestricted. He can do anything he wants to with his non-dominant hand or with his dominant hand and arm. With his non-dominant hand and arm, he only has a minor restriction. He cannot frequently go overhead with his non-dominant hand. But in order to reach, as you and I would conventionally understand reach, and as the DOT and the SCO define reach, all you need is one hand and one arm. If you can reach with one hand, you can reach. Being able to reach with two hands is simply extra. So there's no requirement. What were the jobs that he was found able to do? He was found able to be a cashier, a motel cleaner, and a bench press operator. Bench press. What strikes me that at least the last two, you might well need both arms. Well, you might need both arms. So somebody that had, for example, his arm amputated would not qualify for that job, even though in parentheses we have the F. So I think that you're supposed to look at it in sort of the situation, right? Well, I do think you have to look at it in context, and context obviously matters. So, for instance, when I go to Home Depot, I pick up my lumber and I put it on the cart, and I take it to the cashier. And because I'm relatively old, I hand the cashier my credit card, and they look at me with pity and contempt and say, no, you swipe it, you stick it, you wave it, you something like that. Cashiers are not frequently using both hands and arms above their head. They might be occasionally doing it. When I've gone to Home Depot, I'm so fragile that they have to help me take my thing down. And often those same people that are helping me take the big piece of wood down, because my husband's out doing something else, are cashiers too. They have dual jobs. Well, I don't think that's the definition of a cashier, though. That's a stock clerk. It's not a definition of a cashier. I think it's a nice little argument, but I just think in the world we're supposed to, the ALJ is supposed to look at this and to see, singular or plural, maybe in his decision he makes that distinction, but not in the definitional phase. This just seems, I mean, I understand your argument to be that it may turn out that at least for some portion of the jobs in question, the conflict here will prove to be illusory. The VE will be able to explain, oh no, lots of these cashier jobs you really can do just with one arm. But that's the whole point, right? The ALJ was supposed to elicit that explanation, and we don't have it here. And even if many cashier jobs you can do with one arm, being able to reach overhead with one arm, it may affect the number of jobs for which this person would be eligible, and that matters at step five, right? You know, maybe he can be a cashier at Giant but not at Home Depot, and that matters. Well, it would matter, and each job is going to be different. And there are going to be some jobs as cashiers that require things to be done that you and I can't even imagine, right, that are beyond at least my imagination, your judge. But what the DOT is used for by, you know, by Social Security regulation and policy is to say, what are these jobs about? And when it talks about what these jobs are about, almost every job actually has a requirement for frequent reaching in the SCO, which is the companion to the Dictionary of Occupational Titles. For a lawyer, if you look up in the Dictionary of Occupational Titles the requirements for a lawyer, a general lawyer, there's a requirement for frequent reaching. There's a requirement for frequent reaching if you're a probate lawyer, if you're a real estate lawyer, if you're a tax lawyer, if you're a bar examiner. But if you're a prosecutor or a defense attorney, there's only an occasional requirement for frequent reaching, according to this. And if you're a judge, you don't have any requirement to reach whatsoever. You've got law clerks. So I think because we're applying Social Security rules and counsel's trying to apply Social Security rules, we have to apply the rule. And the definition of the term reaching, which is broadly applied to virtually, well, not virtually, but most jobs, you have to take it in that context. And when the administrative law judge asks, is there a conflict between what you're telling me and the DOT, and the vocational expert says, no, there is no conflict, or I'll tell you if there's a conflict and doesn't tell him that there's a conflict, then he has met, the administrative law judge has met the requirement of the ruling. He's asked if there's a conflict. He's found that there's no possible conflict. That's the evidence in the case. It's not apparent otherwise. It wasn't disclosed by counsel otherwise. It wasn't raised. And, important, the Social Security Administration was not given the opportunity to address the issue. If counsel would have raised the issue, the administrative law judge, the appeals counsel could say, well, wait a second, when we talk about reaching, we mean this, as what the DOT says. That wasn't raised. Well, would you have us establish a rule that the only duty is for the ALJ to ask the vocational expert, is there conflict? And even if there is, let's not this case, another case. There is an obvious conflict, but the vocational expert says there isn't. But we would still affirm because the ALJ asked, did all he had to do, according to you under the statute. Is that your position? You know, I certainly would think there would be occasions where you would say, wait a second, it's obvious that there's a conflict between this. And even though it wasn't apparent, it's nevertheless obvious. But here, it's not obvious. The conflict, in fact, doesn't exist if you read the Dictionary of Occupational Titles. So in this case, I think it's a two-step process. It's actually a two-step process. I understand your position, but, of course, whatever we do here makes law for the next case. It doesn't have quite the same facts. Well, so I think you – I think, first of all – Then you would be perfectly happy with a rule that said, in other cases, where it is – where, in fact, you don't have the underlying definition that you say makes this statement exactly true, but in other cases where you should – the ALJ has an obligation to determine whether there is an obvious conflict or not. Can't just rely on what the vocational expert said. Would you give me one second, first of all, to grab a little bit of water here? Sure. We're all for water. You understand my question? My family – no, I don't, Your Honor. So if you wouldn't mind repeating it so I can make sure that I get the right answer. Okay. You would be satisfied if we said, okay, because we're going to go to your analysis of these – of what is required for reaching or not, and we're going to look there and we're going to say, okay, here there was no reaching requirement, so there was no conflict. But, of course, the ALJ has to make a determination about whether, in fact, there's a conflict, and he can't simply rely on what the vocational expert tells him. Judge, I believe what the administrative law judge needs to do is to apply his experience and his knowledge handling all of these cases day in and day out. And at some point it's reasonable to say to the vocational expert, but not in every case, but in some cases it's reasonable to say to the vocational expert, is there a possible conflict? I don't think there is, but tell me if I'm wrong. Is there a possible conflict? And if the vocational expert says no, there is no possible conflict, and it's not apparent that there is, it's not – Well, but you're putting in additional facts here. I thought that your position was that the ALJ asks the – if it's not, that's great. Then I think we're close to a conclusion here. The ALJ asks, the vocational expert says no, end of story. You're actually going further than I would. But not further than your brief. Well, if in this particular case there wasn't any – I'm trying to get – that's why we had this long hypothetical taking up your time, and I don't want to try to do that again. But you would be happy if we would come out your way in this case, but we would say that you can't simply just say to the vocational expert, is there a conflict, and with his response of no, that's the end of the case. I think it all depends on context, Your Honor. I'm sorry. I believe it depends on the context. If the context was that that was the evidence in the case that, you know, if there was something else apparent, if there was something else obvious, then yes. I think the administrative law judge would have to go further, but that's not the requirement. Where there is – if he says – if the vocational expert says – I guess I'm pretty close to what you're saying. If the vocational expert says there is no possible conflict, period, and that's all you have, well, then that's the evidence in the case. So even if you looked up the DOT after the hearing was over, you looked, you're like, oh, these actually – there is an apparent conflict. It may be a loser. There may be an explanation. But it wouldn't matter because the VE already told you there's no conflict, so you're done. And that's what your brief seems to say, right? The ruling only requires that an ALJ ask the VE whether any possible conflict exists. If the VE answers in the affirmative, the ALJ must then and only then obtain an explanation. The position in your brief seems to be this entire policy is only about this thing on the third page that says the responsibility to ask about conflicts. And that's the whole responsibility to ask. The problem, of course, with broad rules is that there are always exceptions. And if I say yes, I'm certain the court will be able to say, well, what about this and what about that? So I'm permitting that there are possible exceptions. Can I – let me – here's what I actually will say so you won't have to anticipate what my question will be. I'm looking at this policy, and it says at the beginning you have to investigate conflicts before you rely on the VE. The adjudicator must identify and obtain a reasonable explanation for any conflict between the occupational evidence. It says that at the beginning. It says it a couple of times. At the end, it says the adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified. And in the middle of that, there's this teeny little thing, the responsibility to ask about conflicts. And it just seems like this is just the tail wagging the dog. That's just one thing. In order to facilitate this overriding obligation to see whether there is an apparent conflict and if there is, to get it resolved as one procedural mechanism for making sure stuff doesn't slip through the cracks, you're also supposed to ask the VE. Even after you've done your own independent investigation, be sure to ask the VE, is there anything I missed? But then I read your brief, and it sounds like, no, that's the whole thing. Ask the VE, and the rest of it doesn't even exist. And I can't even get my mind around that reading of this policy. That's my question. I believe the section that you're referring to in the SSR 4P is the section titled, The Responsibility to Ask About Conflicts. Right. And if you look at those barely two paragraphs long, it's really two separate notions. The first notion is when the vocational expert provides evidence about the requirements of a job, the adjudicator has an affirmative duty to ask about any possible conflict, period. And then if there is, if the VE evidence appears to conflict, the adjudicator will offer a reasonable explanation for the apparent conflict. In my case, in the case that I briefed, we stopped at the first question because there was no possible conflict. If the hypothetical is, well, what if the S wasn't in parentheses? Pardon? Let's say the hypothetical is the S is not in parentheses in the reaching definition. Well, under the Dictionary Act, 1 U.S.C. 1, the plural includes the singular. And so as I was talking to you originally, when I said hands and arms, I wasn't saying hand, parenthetical S, and arms, parenthetical S, because you just don't say that in ordinary language. So that's part of the problem, I think, is the difference between how you verbalize something and how you write something. And when you write the parenthetical S, that's clearly indicating that you don't need both hands. That one hand will do. One hand will do. Okay. Yes, I'd like to ask a question. Judge Gregory, I have exceeded my time, but of course, whatever you want. Yeah, I haven't asked a question. Your time has expired. This is Judge Gregory's time. Yeah, you have to be answering my question. That's the only time you get dispensation. Wasn't the job he had, was a press operator? No. Wasn't a press operator? I'd have to go back and look. I don't know offhand, but there is an extensive discussion in the administrative law judge's opinion, which is a really extensive discussion, that in the prior year he had cleared an acre of land with a chainsaw and so forth, he had custodial duties, and he was doing a lot of active things. It's been several years since he's worked, so I don't recall what his prior job was. So you don't know the answer to my question? Correct. Okay. But if he was a press operator, it would be kind of odd that one of the residual jobs he could do is press operator, would it? No, sir. He wouldn't? Well, then he's not disabled then. If he can do his job. Correct. He's not disabled. Okay. That's it. That's our position. The hotel job, one last question. Is that to be a person who cleans the guest rooms? That's my understanding, yes, sir. Have you ever seen a man clean a guest room? I've barely seen a man clean a room. There is that. But I've never seen, in every hotel I've ever been, I've never seen a male clean the guest room. Have you? Have you? No, I haven't, but this is a new generation. It's a new generation, but I'm still living in it, but I've never, I've never, I don't think, I've asked people this before, but it's not just because of this case, I've never seen a man cleaning a guest room. He comes up in room service and maybe brings a cot or iron, but not to clean your guest room. You certainly aren't suggesting that men are precluded from that job, are you, Judge? I'm suggesting they don't get the job, and why did you put it as a universal, someone who's disabled as being the universal jobs he could practically get? Isn't that sort of disingenuous? That's what I'm saying. Thank you. I understand your point, but there's nothing, perhaps, except pride that precludes a man from being a motel cleaner. Pride? Or laziness. Or laziness. Well, I think you're being very presumptuous about that. I think there's a reason why men don't clean those rooms. They don't get the job. It's interesting that you can't come up with, and you seem to be more than 50 years old, but having lived more than 50 years, you can't come up with an instance in your mind where you saw a man clean a guest room. I know I can. Okay, well, let me give you an example, having served in the military. Give me an instance, not an example. In the military, for instance, men always clean their own rooms, and they would clean guest rooms, they would clean the rooms of superior officers, and so forth, because that's their job to do sometimes. So it's not exactly a motel. So are you suggesting he signs up to the military to get that job? No, sir. Why would you bring that as an instance? That's so impractical that it doesn't make sense. We're monks. In other words, are we playing games with people? These are people who are disabled, and you're ruling against them because you're saying there's something in the universe they can do, yet you're giving them a job that categorically you can't even give an instance where a man ever got that job. Even if there are a few, in my experience, and I conceded, Judge, right out with you, yes, I don't remember any male ever cleaning a motel room. I concede that right out. But it's not a requirement that you have to be a woman to clean a room. A man can seek that job. When we talk about disabled, we're talking about the United States spending a substantial sum of money to support a person who claims to be disabled, but here the evidence is, and the finding of the administrative law judge, is he can perform the job of a cashier, and there are many jobs of cashiers, male and female, that he can perform the job of a bench press operator, and I've never seen a female bench press operator. And, yes, he can perform the job of a motel cleaner. And I would imagine, for instance, in a rural community where you actually have a motel that you drive through, I haven't stayed at one of those since I was a child, but I would imagine in those situations the person that is the clerk, the cashier, if you will, will also be cleaning rooms. So even if you put aside. One example you came up with is Norman Bates, huh? Never mind. Go ahead. Well, Judge, even if you put that aside, even if you put the position of motel cleaner aside, there are still many jobs that he can perform. And the position of cashier and bench press operator were illustrative of the type of jobs that he could provide, not an exhaustive list. Just following up on Judge Greger's question, because it does sort of make me think more about kind of the practical implications of saying that this guy can do some of these jobs. I mean, does the disability determination, does it take into account at all the likelihood that he'd be able to get the jobs, not given his gender so much as given his disability? Like why would a hotel hire someone who can only lift one hand above his arm to clean a hotel room? Because obviously it's going to go a lot faster if you can use two. Well. Right? It just seems like, I guess I'm still not on board with the idea that there is no apparent conflict here. I mean, it just seems like if you can only lift one arm, how are you going to be reaching that stuff up on the high shelves and everything? How do you put the towels up there? Because I'm a woman, so I clean rooms, and so, you know, it's hard. You have to put things up on high shelves. How's that going to work if you can only lift one arm? I mean, I can imagine it might be possible, but for sure it's going to take twice as long. Say nothing of folding the towel. In this case, though, the restriction is that he cannot use his non-dominant hand, is that he can't use it frequently. I thought he couldn't reach overhead with it at all. No, he cannot frequently reach overhead. Well, he can't frequently reach. That's the restriction is he can't frequently reach. Right, and I thought that what that amounted to was that with his non-dominant arm, he cannot reach it over his head. He can reach over. He can reach occasionally. Okay. Occasionally. He can reach occasionally with his non-dominant. Right. So is anyone going to hire someone like that to do a job that is done far more easily and probably better by someone who can use both arms? If I'm being interviewed for perhaps the job that I'm going to have to take after this is a motel cleaner, if I'm being interviewed for a motel cleaner and I have an injury to my shoulder that's not apparent and most shoulder injuries aren't apparent, we're not talking about something in casts and so forth, I don't think somebody's going to say, oh, by the way, can you lift both hands frequently? Let me put it differently. So he gets the job and it takes him twice as long because he can't reach both arms, and then he gets fired? I'm not actually trying to argue your case with you. It's a genuine question. At this fifth step of figuring out how many jobs are available, does the law, I mean, is this taken into consideration, this idea that, well, perhaps you could kind of do the job, but because of your disability you're not going to be able to do it very well, very quickly, or as efficiently as someone without. Is that part of the analysis or not? Just a question. It seems to me that, you know, an employer obviously might prefer to hire an employee who is 7 feet tall and can put the things on the shelf or take things down from a shelf. They might prefer that, okay, but you're not disabled because you're 5 foot 2. So your answer to the judge's question is no. No. Okay. Okay. I didn't mean to cut you off, but you're a great advocate, and we could listen to you all day, but, you know, you must be getting hungry. We have another case still. Thank you, Your Honor. Thank you very much. Mr. Wallace, do you have any rebuttal? I do, Your Honor. May it please the Court. By the way, my client has also paid in a substantial amount of money to the government, you know, to guarantee him disability insurance as well. I just wanted to make that point. Some jobs require both arms. Some jobs require one arm. That's for the VE to clear up, okay? Every job has frequent reaching. The commissioner concedes, then that proves too much. The ALJ should have known that there was an apparent possible conflict here. The Eighth Circuit and the Seventh Circuit both have held that when a person cannot reach overhead either at all or occasionally, there's a possible conflict with jobs that require frequent reaching. Both of those courts have held that. I didn't read those opinions as bringing up sort of the factual argument that he brought up about the parentheses. Yes. And I guess his submission is that your client is not disabled because there's not even a contention that he cannot reach overhead all the time with one arm. The ALJ found he could only reach overhead with one arm occasionally, his non-dominant arm. No, no, no, the other one. I'm talking about the good one. Yes, yes. And remember the whole argument about the parentheses? Yes. So that's all that's necessary. No. If you can do that, you're not disabled. But the parentheses are there, not because of why the government says they're there. They are there because, as you pointed out, Judge Motz, some jobs require reaching with both arms. Some jobs require reaching only with one arm. I don't think you'd need the parentheses if you just were including everything. I mean, I don't think you've responded to his argument. I mean, maybe there is no response you can make. The response is that when you have a man who is limited to only occasional reaching with one arm, then the question of whether he can perform certain jobs that require frequent reaching, such as these three jobs here, is one for the V.E. to resolve. And while we can draw upon our experience and everything at Home Depot and whatever, I'm not a vocational expert. Government's counsel is not a vocational expert. That's for the vocational expert to explain. That's why we have Social Security ruling 004-P. And in response to the argument that we did not raise this below, we did raise this below. We asked in a letter brief to the appeals counsel, we brought up this very issue. So the agency did have an opportunity to remand the case to the ALJ for clarification. Before the ALJ, you didn't make any argument? No. The attorney did not cross-examine the V.E., nor is he required to do so because it's Step 5. The burden is on the ALJ to come forth with evidence that there's other work in the economy the person can perform. So just to be clear, your client has one arm, and the hand attached to that arm has no restriction? Yes. He can reach overhead with one arm, no restriction. You really do have to ask the commissioner because he says it's in the disjunctive. I don't think that's why the S is there. Why is it there? Because we're defining, he's defining reaching. And the S is there, I think, to signify that, I mean, the DOT doesn't decide. I mean, what the government is arguing here is that the DOT decides, as a matter of first instance, that one arm is enough. But that's not true because one arm is not enough for many jobs. But you're saying under his reading of this definition of reaching, there can be no job in the entire economy that requires someone with both arms? Reaching with both arms, that's right. And if you can reach overhead with one, under his interpretation of that, if you can reach overhead with one arm, you can do all the jobs that require frequent reaching. But, see, I would have thought that all of his definition, tell me why this is wrong, that there are an adequate number of jobs in the national community that require reaching with just one arm. There may be. But we don't know if the three jobs that the VE identified are within that category. Maybe the VE, I mean, if the ALJ had asked the VE here about the specific jobs and how do you reconcile, I see my time is up, may I respond? You can. Then the VE could have simply said, these are not jobs that require reaching overhead with both arms. That would have been one acceptable explanation. You have to admit, though, that you can be a cashier with one arm, any cashier. I don't know. You have to know. Depending on what, if you don't know, if you don't know, can you think of a cashier's job that you can't do with one arm? Well, one arm that can't raise up high. No, no, no, this is an arm without restriction. Right, I know. But I say that it's not like you just have one arm. You have one less use. I mean, it's helping you. I know, exactly. But I'm just saying even more so, even if he had one arm. I know he doesn't have one because he has balance, obviously. Having your arm physically gives you torque and balance. But even if you had one arm, what cashier's job could you not do? I don't know. You reach in the drawer with one hand, you open it, you get the change, you put money in. That might take longer, but you can do the job with one arm. But there may be products that a cashier has to reach for a head to get. Then you reach up and get them because you have one good arm. Maybe the cashier has to change out boxes or products, a head that requires both hands. Your Honor, I don't know. But you're adding things to a cashier's job. You're right, a cashier might be doing everything, might be mopping the floors and doing everything. But the cashier function can be done with one arm. You can have other duties besides cashier. You're right. But cashier is just getting money into and out of the cash drawer and giving someone a receipt. The DOT description of the job is a bit broader. But, again, our contention is that that's not a question that we can answer or the government counsel can answer. It's really not even a question that the ALJ can answer. That's the question that's within the realm of the expert. Well, if that's your position, then it's almost per se every case that the IJ, whether apparent or not, would have to go into delve further than just asking the question. If you're wanting a good rule to fashion, I would suggest that the Tenth Circuit's decision in Haddock is a good place to start because part of the problem here is in how ALJs are interpreting this thing. Just simply ask, is your testimony consistent or not? And there's a yes or no answer. The Tenth Circuit in Haddock repeatedly talked about having an ALJ ask the VE to explain how your testimony corresponds with the DOT, not the if but the how. That would avoid a lot of these problems because then you would have the VE having to go back and reconcile specifically on the record with the DOT. One last very quick question. I feel that I'm under the impression, but I don't know if this is right or not, that it's not enough that at Step 5 isn't there a number of jobs available that's required? So even if we were to say, you know what, we're looking at these three jobs, it looks to us like cashier would be fine at least. That's not enough, right, because there's no kind of harmless error here. There needs to be a total number of jobs available. And if there's an apparent conflict that would rule out at least some of the jobs in question, that would make a difference to the ultimate disability determination. You're right about that. The rule is that there has to be a significant enough jobs existing in the national economy. And they typically save three kinds of jobs. Yes, they talk about the kinds and then the number that are available. The number within, right? Do they ever cut it down even finer? Like would one alternative, if the VE had been asked here, does it ever come out where the VE says, like, okay, as to cashiers, you know, I said $500,000. Now that I think about it, since he can only use one arm over his head, call it $400,000. I mean, do they ever? Yes, they do. Okay. They do. They sure do. And that's what we want to happen. Yes. Thank you, Your Honor. Thank you very much. We will come down and greet the lawyers and then go to our last.
judges: Diana Gribbon Motz, Roger L. Gregory, Pamela A. Harris